**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**CYNTHIA VONA and JAY VONA,**

                           **Plaintiffs,**               05-CV-0131(Sr)

**v.**

**SCHINDLER ELEVATOR CORPORATION**
**MANAGEMENT and MILLAR ELEVATOR**
**SERVICE COMPANY,**

                           **Defendants.**

───────────────────────────────

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #17.

Currently before the Court is defendants', Schindler Elevator Corporation Management and Millar Elevator Service Company, motion for summary judgment (Dkt. #19) and request for the preclusion of plaintiffs' expert witness (Dkt. #29-1).  For the following reasons, defendants' motion for summary judgment is denied and defendants' request for the preclusion of plaintiffs' expert witness and an Order striking plaintiffs' expert "report" is granted.

**PROCEDURAL BACKGROUND**

On or about February 8, 2005, plaintiffs Cynthia Vona and Jay Vona commenced this action in New York State Supreme Court, Erie County against defendants Schindler Elevator Corporation Management and Millar Elevator Service Company (collectively, "Schindler") seeking damages for Schindler's negligence, strict products liability, breach of warranty, failure to warn and loss of consortium. Dkt. #1-2. Thereafter, on or about February 25, 2005, Schindler removed the action to the United States District Court for the Western District of New York. Dkt. #1. Schindler filed its answer to the complaint on or about March 11, 2005. Dkt. #2. A Preliminary Pretrial Conference was held with this Court on May 23, 2005 wherein a Case Management Order was put in place. Dkt. ##6 and 7.

> The Case Management Order provided, *inter alia*, that
>
> 4. Plaintiff shall identify any expert witness who may be used at trial and provide reports pursuant to Fed.R.Civ.P. 26(a)(2)(B) by **March 1, 2006**. Defendant shall identify any expert witnesses who may be used at trial and provide reports pursuant to Fed.R.Civ.P. 26(a)(2)(B) by **April 1, 2006**. Such disclosures shall be served on all counsel. *See also* Local Rule 26.
>
> 5. All expert depositions shall be completed no later than **June 1, 2006**.
>
> 6. All discovery in this case shall be completed no later than **June 1, 2006**.

Dkt. #7. By letter dated May 31, 2006, plaintiffs' counsel requested an extension of time to complete all remaining discovery to August 1, 2006. This Court issued an

Amended Case Management Order on May 31, 2006 which, consistent with plaintiffs'

counsel's request, provided for all discovery to be completed no later than August 1,

2006. Dkt. #14. The Amended Case Management Order further provided that

dispositive motions by all parties shall be filed and served no later than September 29,

2006. *Id*. Neither plaintiffs nor defendants designated an expert witness at any time

during the pendency of discovery. A settlement conference was held on September 19,

2006, wherein counsel for Schindler advised that a motion for summary judgment would

be forthcoming. By letter dated September 27, 2006, counsel for Schindler requested

that this Court further amend the Case Management Order to allow dispositive motions

to be filed by October 6, 2006. On September 27, 2006, this Court issued a Text Order

extending the deadline for the filing of dispositive motions to October 6, 2006. Dkt. #18.

Schindler filed its motion for summary judgment on October 6, 2006. Dkt.

#19. Thereafter, this Court issued a Text Order providing that papers in response to

Schindler's motion for summary judgment shall be served and filed no later than

October 27, 2006 and reply papers, if any, shall be served and filed no later than

November 20, 2006. Dkt. #20. Oral argument was originally scheduled for November

17, 2006, however, the Court re-scheduled oral argument to November 30, 2006. Dkt.

##20 and 21. Thereafter, by letter dated October 26, 2006, counsel for plaintiffs

requested, with the consent of defense counsel, that plaintiffs' time to respond to

Schindler's motion for summary judgment be extended to November 16, 2006 and that

Schindler's time to reply also be extended to November 27, 2006. This Court granted

plaintiffs' counsel's request on October 27, 2006. Dkt. #22.

On November 16, 2006, plaintiffs' counsel filed a Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. Dkt. #23. One day after their time to file a response had passed, on November 17, 2006, plaintiffs filed a Local Rule 56.1(b) Statement of Facts (Dkt. #25) together with an Appendix to Local Rule 56.1(b) Statement of Facts (Dkt. ##26-28). On page 10 at paragraph 68 of plaintiffs' Local Rule 56.1(b) Statement of Facts, plaintiffs' state, "[i]n further opposition to the motion for summary judgment, plaintiffs proffer the affidavit of expert C. Stephen Carr." Dkt. #25-2, ¶ 68. Indeed, contained within plaintiffs' lengthy Appendix, at Exhibit E, is an affidavit of C. Stephen Carr. Dkt. #27-7. Also contained within plaintiffs' Appendix, at Exhibit I, is a one-page document described by C. Stephen Carr as his "Curriculum Vitae" together with a one-page certificate stating that C. Stephen Carr "has met all the academic and practical requirements set forth by NAESA International and is therefore declared to be a Certified Elevator Safety Inspector." Dkt. #27-12.

Schindler filed its Reply Memorandum of Law, Affidavit of Harry Camardella and Affidavit of Paul G. Joyce, Esq. on November 27, 2006. Dkt. #29. In its Reply Memorandum of Law, Schindler argues that plaintiffs' expert affidavit is inadmissible, requests this Court to preclude plaintiffs' expert for plaintiffs' failure to abide by this Court's Case Management Order and to strike plaintiffs' expert affidavit (Dkt. #26-7) submitted in opposition to Schindler's motion for summary judgment. Dkt. #29-1, pp.2-9. Oral argument was held on November 30, 2006. Dkt. #30.

# **FACTUAL BACKGROUND**

The allegations in plaintiffs' complaint arise out of a July 29, 2002 incident at Kenmore Mercy Hospital.  Dkt. #1-2.  Specifically, plaintiffs allege that on July 29, 2002 while plaintiff, Cynthia Vona, was working as a radiology/mammography technician at Kenmore Mercy Hospital, she was struck by an elevator door as she was pulling a portable x-ray machine onto an elevator.  *Id*.  Plaintiffs claim that Schindler was "negligent and careless in testing, inspecting, assembling, distributing, labeling, selling and promoting its elevator; that the elevator was defective in its design, manufacture, assembly and inspection; that Schindler breached express and implied warranties to plaintiff; and that Schindler failed to warn plaintiff about the alleged inherent dangers in the use of the subject elevator."  Dkt. #19-2, ¶ 2.

At some point prior to July 29, 2002, plaintiff Cynthia Vona began her employment at Kenmore Mercy Hospital as a "radiology technologist/mammography technologist."  Dkt. #26-8, p.5.  In 2002, Schindler had the contract to provide maintenance on all of the elevators and escalators at Kenmore Mercy Hospital.  Dkt. #19-2, ¶ 3.  In 2002, Schindler's assigned technician for Kenmore Mercy Hospital was Harry Camardella.  Dkt. #19-2, ¶ 4.  Based on the record before this Court, there appears to be a discrepancy in the record as to which elevator was involved in the alleged incident on July 29, 2002.  As a threshold matter, on the Incident Report completed by plaintiff on or about July 29, 2002, plaintiff states that the location of the accident was "Elevator going to 3East"  Dkt. #28-10, p.2.  Conversely, in Plaintiffs' Responses to Defendants' First Set of Interrogatories, plaintiffs state that "[t]he incident

occurred on the first floor of Kenmore Mercy Hospital ... at the patient and employee elevator commonly known as Elevator 1 normally used by the hospital staff to move and transport patients and equipment, near the Café Aroma kiosk." Dkt. #19-4, p.6; Dkt. #26-5, p.4. In Plaintiffs' Local Rule 56.1(b) Statement of Facts, plaintiffs state that at the time of the incident, "[s]he [plaintiff] was on the second floor of the hospital, between the Intensive Care Unit and a ward. There are two elevators in that bay." Dkt. #25, ¶ 10. Later in the same document, plaintiffs quote the deposition testimony of a witness to the incident who states, "[w]e took the portable and got on the 3 east elevator." Dkt. #25, ¶ 27. Lastly, Harry Camardella, Schindler's technician assigned to Kenmore Mercy Hospital in 2002, did not know during his deposition taken on July 26, 2006, which elevator, number 3 or number 4, was involved in the alleged incident. Dkt. #27-2, p.4. Thereafter, in an affidavit submitted in further support of defendants' motion for summary judgment, Harry Camardella states, "[h]aving reviewed the schematics for the elevator bay in question, and based upon the testimony of Sister Sheila Lederer [witness to incident], the elevator that is in issue in this matter is Elevator No. 4, contrary to the sworn statements of Mr. Carr [plaintiffs' expert] and Ms. Vona."[1] Dkt. #29-2, ¶ 5.

---

[1] Notably, Sister Sheila Lederer testified that "they [the elevators] have numbers now [July 26, 2006 date of her deposition], but I don't think they did then." Dkt. #27-10, p.4. Thus, although Sister Sheila's testimony does not clarify for purposes of deciding the instant motion which elevator was actually involved in the incident, it is possible that the elevator that plaintiff initially refers to as Elevator 1, that Sister Sheila refers to as 3East and that Harry Camardella refers to as Elevator 4 could all be the same elevator. Notwithstanding that possibility, the record before this Court remains unclear which elevator was involved in the July 29, 2002 incident.

Schindler performed preventative maintenance on the elevators at Kenmore Mercy Hospital, including,

> physically going on each elevator, checking for burned-out light bulbs, verifying that the elevators stopped on the floor selected, verifying that the elevator door safety beams functioned properly by waiting for the doors the [sic] close and then intentionally interrupting the safety beam by placing my hand in the path of the doors and watching them reopen and verifying that the doors opened and closed at the proper speed and configuration.

Dkt. #19-4, ¶ 6. Harry Camardella performed preventative maintenance on all of the elevators at Kenmore Mercy Hospital on July 3, 2002, July 19, 2002, July 24, 2002 and July 25, 2002. *Id*. at ¶ 7. In the month after the July 29, 2002 incident, Harry Camardella performed preventative maintenance on all the elevators at Kenmore Mercy Hospital on August 2, 2002, August 9, 2002, August 15, 2002 and August 27, 2002. *Id*. at ¶ 8. In support of Schindler's motion for summary judgment, Harry Camardella states

> I did not note any problems with the elevator's door function or safety beams during any of the above dates where [sic] I performed preventative maintenance. If I had seen any problem with any elevators' door function or safety beams while performing preventative maintenance, I would have noted and repaired any problems.

Dkt. #19-4, ¶¶ 9-10.

In addition to the discrepancy concerning which elevator was involved in the July 29, 2002 incident, there is a further discrepancy over whether the elevator involved in the incident was equipped with a "pana-40" safety edge. In his deposition, Harry Camardella testified that the elevator in question (and all of the elevators at

Kenmore Mercy) has a "pana-40" safety edge which emits 40 infrared safety beams horizontally across the opening of the elevator door. Dkt. #19-2, ¶ 11. According to Harry Camardella, the safety beams start approximately one inch from the floor and are spaced approximately every half inch going up the elevator door. *Id*. Harry Camardella further testified that if more than five safety beams were inoperative, the elevator would cease to function and the elevator door would not close. *Id*. at ¶ 12. Moreover, if the "pana-40" safety beam failed in its entirety, the elevator door would not close. *Id*. at ¶ 13. Notwithstanding Mr. Camardella's statement that all of the elevators at Kenmore Mercy were equipped with a "pana-40" safety edge, in opposition to Schindler's motion for summary judgment, plaintiffs attach a copy of a June 12, 2004 Upgrade Order Agreement which proposes the installation of a "Progard L infrared door protection" system on an unspecified elevator at Kenmore Mercy Hospital. Indeed, the Upgrade Order Agreement provides in pertinent part, "[c]urrently, your elevator is equipped with an old style mechanical safety edge that requires full contact with a person or object in order to stop the door and reopen." Dkt. #27-15, p.2. Finally, plaintiffs submit that Sister Sheila's testimony, quoted below, wherein she stated that she "grabbed the rubber part of the door to shove it open" contributes to the confusion over whether the elevator in question was equipped with a "pana-40" safety edge or a retractable rubber bumper system.

As part of her duties, plaintiff would use the portable x-ray machine. Dkt. #19-2, ¶ 17. At the time of the alleged incident, plaintiff was returning a portable x-ray machine from the second floor to the x-ray department on the first floor. Dkt. #19-2,

¶ 18.  Sister Sheila Lederer (hereinafter, "Sister Sheila"), an aide at Kenmore Mercy

Hospital, had accompanied plaintiff to the second floor to assist with the portable x-ray.

*Id*.  Sister Sheila entered the elevator first and was facing the elevator door while

plaintiff was backing the portable x-ray machine into the elevator.  Dkt. #19-2, ¶ 20; Dkt.

#25, ¶ 30.  As plaintiff was backing onto the elevator, Sister Sheila said that she would

hold the door open.  Dkt. #19-2, ¶ 23.  Specifically, Sister Sheila further testified,

> [w]e took the portable and got on the three east elevator.
> And the elevator came and I got on.  And I said, I'll hold the
> button for you.  The door started to close.  I don't know
> whether or not I had the right or wrong button.  I grabbed the
> rubber part of the door to shove it open.  As I was holding
> the door, I turned and said to her, I'm sorry if that hit you.

Dkt. #27-10, p.4.  In support of its motion for summary judgment, Schindler submits

that,

> the 'door-close' button on the Schindler elevators at
> Kenmore Mercy Hospital only work in 'fire mode.'  The door-
> close button will only function when firemen or building
> personnel turn a key on the control panel.  On the elevator,
> the close-door button is strictly an emergency button and
> does not have any affect on door closing time, if pressed
> when not activated into fire mode.

Dkt. #19-2, ¶ 44.  Moreover, Schindler states that it has no reason to believe that the

elevator was activated into fire mode at the time of the incident.  *Id*. at ¶ 45.


Plaintiff testified that when she was lining up the portable x-ray machine to

enter the elevator, the elevator doors were on her right.  Dkt. #19-2, ¶ 21.  In opposition

to Schindler's motion for summary judgment, plaintiffs state,

> [w]hen plaintiff had positioned herself just before the
> threshold, she looked to the right to make sure that the door

> was open and that she had clearance to get the machine on
> that side. Plaintiff had clearance on that side and then
> looked to the left. She cleared that side as well. As plaintiff
> was looking to her left, she felt tremendous pressure on her
> right arm, and looked to her right and noticed that the door
> was closing on her. She felt the door applying pressure to
> her right shoulder and neck. It was pushing her neck and
> shoulder area.

Dkt. #25, ¶ 17. Sister Sheila testified that she did not observe the elevator door hit

plaintiff, nor did she observe plaintiff fall down or "pass out." Dkt. #19-2, ¶¶ 27 and 34.

Plaintiff further testified that she could not recall whether the elevator involved in the

incident had a contact bar or an electronic eye. Dkt. #25, ¶ 18. Sister Sheila testified

that after the elevator door retracted, plaintiff pulled the portable x-ray machine onto the

elevator and it was at that time that Sister Sheila first saw plaintiff grab her shoulder.

Dkt. #19-2, ¶¶ 35-36. Plaintiff completed an Incident Report wherein she described the

incident as follows,

> I was going onto the elevator with the portable xray machine
> + Sister Sheila was pressing the button to hold the door
> open. Instead she said she pressed the closed [sic] door
> button and the door rammed into my right upper arm and
> hurting my neck + shoulder. The electric eye on door failed
> to work.

Dkt. #28-10, p.2. Plaintiff further stated in the Incident Report that she treated the injury

at home with ice. Dkt. #28-10, p.2. At the time of the alleged incident, plaintiff's shift

was almost over but she completed it and went home. Dkt. #19-2, ¶ 37; Dkt. #25, ¶ 22.

The following day plaintiff returned to work for a couple of hours and according to

plaintiff, "has not returned since."[2]  Dkt. #25, ¶ 23.  In or about January 2005, plaintiff

had cervical surgery, a "fusion with instrumentation."  Dkt. #25, ¶ 24; Dkt. #26-11, p.2.


In support of its motion for summary judgment, Schindler maintains that at

no time prior to the commencement of this action was it informed of the alleged

incident.  Dkt. #19-2, ¶ 51.  Typically, an accident involving an injury on an elevator

maintained by Schindler would be reported directly to Schindler.  *Id*. at ¶ 52.  However,

Schindler was not contacted to perform service on any elevator at Kenmore Mercy on

or about July 29, 2002 as a result of an incident/accident.  *Id*. at ¶ 53. Had an

accident/injury involving an elevator at Kenmore Mercy been reported to Schindler, a

thorough investigation would have been conducted by Schindler.  *Id*. at ¶ 54.

Specifically, Harry Camardella would have been informed of such an accident and

investigation.  *Id*.


## DISCUSSION AND ANALYSIS

### Expert Disclosure

Fed.R.Civ.P 16(b) requires that the district court enter a scheduling order

setting deadlines for, *inter alia*, completion of discovery.  This Court's Case

Management Order set March 1, 2006 as the deadline for plaintiffs to identify any

---

[2] Notwithstanding the foregoing, plaintiff testified during her deposition that she returned to work on December 30, 2002 because she was told by her supervisor that she "was in threat of losing her job."  Dkt. #26-11, p.3.  Plaintiff further testified that she returned to work for approximately nine days, until January 9, 2003 at which time her physician instructed her not to return to work because plaintiff complained of pain.  *Id*.

expert witnesses who may be used at trial and provide reports pursuant to Fed.R.Civ.P. 26(a)(2)(B). Dkt. #7. The Case Management Order further provided that defendants shall identify any expert witnesses who may be used at trial and provide reports pursuant to Fed.R.Civ.P. 26(a)(2)(B) by April 1, 2006. *Id*. All expert depositions were to be completed no later than June 1, 2006; all discovery in the case was to be completed no later than June 1, 2006. *Id*.

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides as follows:

(A)     *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B)     *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

   (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

   (ii)  the data or other information considered by the witness in forming them;

   (iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Time to Disclose Expert Testimony*.  A party must make these disclosures at the times and in the sequence that the court orders. . . .

The scheduling order cannot be modified except by leave of the district court upon a showing of good cause.  Fed.R.Civ.P 16(b).  "'Good cause' means that scheduling deadlines cannot be met despite a party's diligence."  *Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("finding of 'good cause' depends on the diligence of the moving party"); *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.").

If the scheduling order is not extended, plaintiff will find herself subject to Fed.R.Civ.P. 37(c), which provides, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Notwithstanding the mandatory language of the rule,

courts in the Second Circuit have viewed the imposition of sanctions under the rule as discretionary and have generally not ordered preclusion." *Houlihan v. Invacare Corp.*, No. CV 2004-4286, 2006 WL 1455469, at *1 (E.D.N.Y. May 24, 2006).  In assessing whether a district court has exercised its discretion appropriately, the Court of Appeals for the Second Circuit considers: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.  *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).

By letter dated May 31, 2006, plaintiffs' counsel requested an extension of time to complete all remaining discovery to August 1, 2006.  This Court issued an Amended Case Management Order on May 31, 2006 which, consistent with plaintiffs' counsel's request, provided for all discovery to be completed no later than August 1, 2006.  Dkt. #14.  The Amended Case Management Order further provided that dispositive motions by all parties shall be filed and served no later than September 29, 2006.  *Id*.  At no time during the pendency of discovery did plaintiffs designate an expert witness or request an extension of time to designate an expert witness.  Thereafter, Schindler requested and this Court granted a request for an extension of time to file dispositive motions.  Schindler filed its motion for summary judgment on October 6, 2006.  Dkt. #19.

A Text Order issued by this Court provided that papers in response to Schindler's motion for summary judgment shall be served and filed no later than October 27, 2006 and reply papers, if any, shall be served and filed no later than November 20, 2006. Dkt. #20. By letter dated October 26, 2006, counsel for plaintiffs requested, with the consent of defense counsel, that plaintiffs' time to respond to Schindler's motion for summary judgment be extended to November 16, 2006 and that Schindler's time to reply also be extended to November 27, 2006. This Court granted plaintiffs' counsel's request on October 27, 2006. Dkt. #22.

On November 16, 2006, plaintiffs' counsel filed a Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. Dkt. #23. One day after their time to file a response had passed, on November 17, 2006, plaintiffs filed a Local Rule 56.1(b) Statement of Facts (Dkt. #25) together with an Appendix to Local Rule 56.1(b) Statement of Facts (Dkt. ##26-28). On page 10 at paragraph 68 of plaintiffs' Local Rule 56.1(b) Statement of Facts, plaintiffs state, "[i]n further opposition to the motion for summary judgment, plaintiffs proffer the affidavit of expert C. Stephen Carr." Dkt. #25-2, ¶ 68. Indeed, contained within plaintiffs' lengthy Appendix, at Exhibit E, is an affidavit of C. Stephen Carr. Dkt. #27-7. Also contained within plaintiffs' Appendix, at Exhibit I, is a one-page document described by C. Stephen Carr as his "Curriculum Vitae" together with a one-page certificate stating that C. Stephen Carr "has met all the academic and practical requirements set forth by NAESA International and is therefore declared to be a Certified Elevator Safety Inspector." Dkt. #27-12.

Schindler filed its Reply Memorandum of Law, Affidavit of Harry Camardella and Affidavit of Paul G. Joyce, Esq. on November 27, 2006. Dkt. #29. In its Reply Memorandum of Law, Schindler argues that plaintiffs' expert affidavit is inadmissible, requests this Court to preclude plaintiffs' expert for plaintiffs' failure to abide by this Court's Case Management Order and to strike plaintiffs' expert affidavit (Dkt. #26-7) submitted in opposition to Schindler's motion for summary judgment. Dkt. #29-1, pp.2-9.

Plaintiffs offer no explanation for their failure to comply with this Court's Case Management Order setting forth the March 1, 2006 deadline for the identification of an expert witness and the production of the expert's report. Moreover, plaintiffs' submission of an expert witness' affidavit, a one-page "Curriculum Vitae" together with a one-page certificate is woefully insufficient to satisfy the requirements set forth in Fed.R.Civ.P. 26(a)(2). Despite seeking two extensions of time for dates set forth in this Court's Case Management Orders, plaintiffs' counsel made no effort to extend the expert disclosure deadline. Rather, plaintiffs' counsel simply filed an expert affidavit in an effort to defeat a motion for summary judgment nearly eight months after the deadline for expert disclosure had passed. Such a flagrant disregard for the deadlines set forth in this Court's Case Management Orders will not be tolerated. Moreover, the affidavit, one-page "Curriculum Vitae" together with a one-page certificate submitted by plaintiffs fails to satisfy all the requirements for expert disclosure as provided in Rule 26(a)(2)(B).

As set forth in *Houlihan*, imposition of sanctions under the Fed.R.Civ.P. 37 is discretionary. *Houlihan v. Invacare Corp.*, No. CV 2004-4286, 2006 WL 1455469, at *1 (E.D.N.Y. May 24, 2006) (collecting cases). Moreover, the Second Circuit stated in *Patterson*, in assessing whether a district court has exercised its discretion appropriately, the Court considers the following factors (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). In the instant case, plaintiffs offer no explanation whatsoever for their failure to comply with this Court's Case Management Orders and the requirements set forth in Fed.R.Civ.P. 26(a)(2)(B). Plaintiffs simply include an affidavit from an expert in their opposition to Schindler's motion for summary judgment. With respect to the second factor, there is nothing in the record before this Court concerning the importance of the testimony of the precluded witness. The prejudice to Schindler if plaintiffs are permitted to rely on the expert's affidavit in opposition to the pending motion for summary judgment and later, the expert's testimony at a trial would be significant. Schindler had no notice that plaintiffs intended to use an expert witness until its receipt of plaintiffs' opposition to the motion for summary judgment. To allow plaintiffs to proceed with an expert witness at this late date would require substantial additional time for discovery and considerable expense. Finally, with respect to the possibility of a continuance, this Court finds that a continuance is not warranted since discovery closed several months prior to the filing of the instant motion and to allow additional expert discovery would only serve to cause

significant delay.  Accordingly, for the foregoing reasons, Schindler's request to preclude plaintiffs' expert for plaintiffs' failure to abide by this Court's Case Management Order and request to strike plaintiffs' expert affidavit are granted.  For purposes of deciding Schindler's motion for summary judgment, this Court has disregarded the affidavit of C. Stephen Carr and any references thereto.

## Application of New York Law

Where jurisdiction is based on diversity of citizenship of the parties, the Court must apply the substantive law of the forum state.  "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues."  *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

As a threshold matter, the record before this Court reveals that the parties cannot agree as to which elevator was involved in the alleged incident. On the Incident Report completed by plaintiff on or about July 29, 2002, plaintiff states that the location of the accident was "Elevator going to 3East" Dkt. #28-10, p.2. Conversely, in

Plaintiffs' Responses to Defendants' First Set of Interrogatories, plaintiffs state that

"[t]he incident occurred on the first floor of Kenmore Mercy Hospital ... at the patient and

employee elevator commonly known as Elevator 1 normally used by the hospital staff to

move and transport patients and equipment, near the Café Aroma kiosk."  Dkt. #19-4,

p.6; Dkt. #26-5, p.4.  Thereafter, in her deposition, plaintiff stated that the elevator was

located on the second floor "between the intensive care unit and one of the wards" and

was in a bay of two elevators and when facing the elevators, it was the elevator on the

left.  Dkt. #26-9, p.1.  In Plaintiffs' Local Rule 56.1(b) Statement of Facts, plaintiffs

quote the deposition testimony of a witness to the incident who states, "[w]e took the

portable and got on the 3 east elevator."  Dkt. #25, ¶ 27.  Lastly, Harry Camardella,

Schindler's technician assigned to Kenmore Mercy Hospital in 2002, did not know

during his deposition taken on July 26, 2006, which elevator, number 3 or number 4,

was involved in the alleged incident.  Dkt. #27-2, p.4.  Thereafter, in an affidavit

submitted in further support of defendants' motion for summary judgment, Harry

Camardella states, ["[h]aving reviewed the schematics for the elevator bay in question,

and based upon the testimony of Sister Sheila Lederer, the elevator that is in issue in

this matter is Elevator No. 4, contrary to the sworn statement[] of ... Ms. Vona."  Dkt.

#29-2, ¶ 5.


        Notably, Sister Sheila Lederer further testified that "they [the elevators]

have numbers now [July 26, 2006 date of her deposition], but I don't think they did then

[date of the incident]."  Dkt. #27-10, p.4.  Although Sister Sheila's testimony may offer

an explanation for the confusion between the parties, it does not clarify for purposes of

deciding the instant motion, which elevator was actually involved in the alleged incident and that fact remains unclear.  Accordingly, this Court finds that one of the most crucial and therefore, material, facts in the instant case remains disputed.  Standing alone, a disputed issue over which elevator was involved in the alleged incident is sufficient to defeat Schindler's motion for summary judgment.  However, the record before this Court reveals that there is also the related issue of whether the actual elevator at issue was equipped with the "pana-40" system.

As discussed above, the Schindler technician assigned the responsibility of servicing the elevators at Kenmore Mercy Hospital, Harry Camardella, stated that not only did the elevator at issue (a fact still in dispute) but all the elevators at Kenmore Mercy Hospital were equipped with the "pana-40" system.  Dkt. #19-2, ¶ 11; Dkt. #19-4, p.35.  In his deposition, Harry Camardella further testified that if more than five safety beams were inoperative, the elevator would cease to function and the elevator door would not close.  Dkt. #19-2, ¶ 12; Dkt. #19-4, pp.48-49.  Moreover, if the "pana-40" safety beam failed in its entirety, the elevator door would not close.  Dkt. #19-2, ¶ 13; Dkt. #19-4, pp.45-46.

While it is certainly conceivable that at the time of his deposition (July 26, 2006) and at the time he authored his affidavits (October-November 2006) submitted in support of Schindler's motion for summary judgment, all of the elevators at Kenmore Mercy Hospital were equipped with a "pana-40" safety edge.  However, a Schindler document submitted by plaintiffs' in opposition to Schindler's summary judgment motion

suggests that at least as late as June 12, 2004, at least one unidentified elevator at Kenmore Mercy Hospital did not have a "pana-40" safety edge. Specifically, in opposition to Schindler's motion for summary judgment, plaintiffs attach a copy of a June 12, 2004 Upgrade Order Agreement which proposes the installation of a "Progard L infrared door protection" system on an unspecified elevator. Indeed, the Upgrade Order Agreement provides in pertinent part, "[c]urrently, your elevator is equipped with an old style mechanical safety edge that requires full contact with a person or object in order to stop the door and reopen." Dkt. #27-15, p.2. In addition to the foregoing, the testimony of Sister Sheila further underscores the uncertainty of whether the elevator in question was equipped with a "pana-40" safety edge or a retractable rubber bumper system. Specifically, Sister Sheila testified,

> [w]e took the portable and got on the three east elevator. And the elevator came and I got on. And I said, I'll hold the button for you. The door started to close. I don't know whether or not I had the right or wrong button. **I grabbed the rubber part of the door to shove it open**. As I was holding the door, I turned and said to her, I'm sorry if that hit you.

Dkt. #27-10, p.4 (emphasis added). Thus, in examining the totality of the record before this Court, including, the deposition and affidavit testimony of Harry Camardella, the deposition testimony of Sister Sheila, as well as the Upgrade Order Agreement submitted by plaintiffs, this Court finds that material issues of fact remain with respect to whether the elevator at issue was equipped with a "pana-40" safety edge or a rubber bumper system. Therefore, Schindler's motion for summary judgment is denied.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #19) is denied and defendants' request for the preclusion of plaintiffs' expert witness and an Order striking plaintiffs' expert "report" (Dkt. #29-1) is granted.

It is hereby ORDERED that the affidavit of plaintiffs' expert, C. Stephen Carr (Dkt. #26-7 (Exhibit E to plaintiffs' Appendix to Local Rule 56.1(b) Statement of Facts)); Curriculum Vitae of C. Stephen Carr (Dkt. #27-12 (Exhibit I to plaintiffs' Appendix to Local Rule 56.1(b) Statement of Facts)) and Summary Matrix of Maintenance Tickets prepared by C. Stephen Carr (Dkt. #27-13 (Exhibit J to plaintiffs' Appendix to Local Rule 56.1(b) Statement of Facts)) are stricken from the record in this case.

**SO ORDERED.**

DATED:      Buffalo, New York
              July 14, 2009

                                             **s/ H. Kenneth Schroeder, Jr.**
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**